UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-21472-Civ-COOKE/TORRES

ARMANDO MERCADO,

    Plaintiff,

vs.

FEDERAL EXPRESS CORPORATION and
AETNA LIFE INSURANCE COMPANY,

    Defendants.
_____/

**OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

    Plaintiff brings this action against Defendants for their denial of his claims for long-term disability ("LTD") benefits, violating 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 – 1461. Both sides have filed motions for summary judgment (ECF Nos. 30, 33). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided in this Order, summary judgment is granted in favor of Defendants.

**I. BACKGROUND**

    Federal Express Corporation's ("FedEx") Long Term Disability Plan ("LTD Plan") is an employee welfare benefit plan covered under ERISA that provides LTD benefits to eligible employees. Joint Pretrial Stip. ¶ 5(e), ECF No. 54. Two fiduciaries of the LTD Plan include FedEx as the LTD Plan Administrator and Aetna Life Insurance Company ("Aetna") as the Claims Paying Administrator. *Id.* ¶ 5(h), (k). FedEx maintains a trust fund for the purpose of paying benefits to eligible employees under the LTD Plan. *Id.* ¶ 5(f). Aetna gathers claims under the LTD Plan and has exclusive authority to determine benefits under the LTD Plan. *Id.* ¶ 5(i) – (j).

    The LTD Plan provides LTD benefits to a disabled employee for up to two years if the employee has an "Occupational Disability" under the LTD Plan that prevents a disabled employee from "perform[ing] the duties of his regular occupation." *Id.* ¶ 5(o), (q). To receive LTD benefits beyond two years, a disabled employee must have a "Total Disability" under

the LTD Plan that prevents him from working in "any compensable employment" for at least twenty-five hours a week. *Id.* ¶ 5(o), (r).

Plaintiff Armando Mercado ("Plaintiff" or "Mercado") was a former operations manager at FedEx and participant in the company's LTD Plan. *Id.* ¶ 5(g). Mercado received short-term disability benefits from April to October 2012 related to the avascular necrosis in in his hips, back pain, spinal stenosis, obstructive sleep apnea, and gastroesophageal reflux disease. *Id.* ¶ 5(s). He also underwent surgeries on his ankles and elbow, used a machine for his sleep apnea, and suffered from polyneuropathy in his lower extremities. *Id.* ¶ 5(t). Mercado successfully applied for and received LTD benefits from October 2012 through October 2014, since Aetna determined there were "significant objective findings" that Mercado had an "Occupational Disability" as defined under the LTD Plan. *Id.* ¶ 5(u); *see also* ECF 27-1 at AR00001.

Various entities and physicians offered their assessment of Mercado's disability during this time. The Social Security Administration ("SSA") found in February 2014 that Mercado was entitled to disability benefits from March 2012 under federal regulations, and that he was "able to stand and/or walk 1 hour total in an 8-hour work day, [and] sit 4 hours total in an 8-hour work day." Joint Pretrial Stip. ¶ 5(w) – (x); *see also* ECF No. 27-1 at AR00002. A compensation and pension examination in November 2013 at the Veteran Affairs Outpatient Clinic ("VA OPC") concluded that Mercado's degenerative arthritis in his ankles would prevent "physical . . . but not sedentary employment," while his back condition would "prevent all physical and sedentary employment." Joint Pretrial Stip. ¶ 5(z); *see also* ECF No. 27-1 at AR00149, AR00159. At the behest of Aetna, Dr. John-Paul Rue ("Dr. Rue") peer reviewed Mercado's medical records in August 2014. *Id.* ¶ 5(bb). Dr. Rue found that Mercado suffered from various conditions and diseases in his hips and legs, but that his "medical conditions [were] controlled and not contributing to his overall functional impairment." *Id.* ¶ 5(cc). He concluded there was "insufficient evidence of a functional impairment severe enough such that the claimant [could not] engage in any compensable employment for a minimum of 25 hours a week." ECF No. 27-3 at AR00919.

A month after Dr. Rue issued his report, Aetna decided to cease Mercado's LTD benefits after his two-year benefits period expired. *Id.* ¶ 5(dd). Mercado appealed Aetna's decision and, in response, Aetna tasked Dr. Martin Mendelssohn ("Dr. Mendelssohn") to

write another peer review report based on Mercado's medical records. *Id.* ¶ 5(ff) – (gg). Dr. Mendelssohn concluded that, despite Mercado's past and potential surgical procedures and his pain management regiment, "[t]here was no significant objective clinical documentation that reveals a functional impairment that would preclude the claimant from engaging any compensable employment for a period of 25 hours per week provided with sedentary or light physical exertion level." *Id.* ¶ 5(gg). In November 2014, Aetna informed Mercado his appeal was denied and his LTD benefits would expire. *Id.* ¶ 5(hh). Plaintiff challenges Aetna's decision in this Court and seeks past due LTD benefits, interest, and attorney's fees from Defendants.

## II. LEGAL STANDARD

Although this matter is before me on cross motions for summary judgment, ERISA benefits denial cases perch the district court as more of "an appellate tribunal than as a trial court." *See Curran v. Kemper Nat. Servs., Inc.,* No. 04-14097, 2005 WL 894840, at * 7 (11th Cir. 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17 – 18 (1st Cir. 2002)). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Id*. Thus, there "may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would." *Pinto v. Aetna Life Ins. Co.,* No. 09-01893, 2011 WL 536443, at *8 (M.D. Fla. Feb.15, 2011); *see also Turner v. Am. Airlines, Inc.*, No. 10-80623, 2011 WL 1542078, at *4 (S.D. Fla. Apr. 21, 2011) ("[W]here . . . the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.") (internal quotation marks omitted).

### III. ANALYSIS

**A. Benefit Determinations Framework**

The U.S. Court of Appeals for the Eleventh Circuit has developed a six-step framework for analyzing an administrator's benefits decision:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

**B. Application of Analytical Framework**

    1. Administrator Decision

When a plaintiff challenges a denial of benefits under 29 U.S.C. § 1132(a)(1)(B), a court must review such denial "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Aetna as the Claims Paying Administrator had the authority to determine benefit eligibility and construe the terms of the LTD Plan. Thus, I will begin the analysis at step two of the Eleventh Circuit framework; "in other words, the Court will proceed as if Defendant's decision, were it reviewable under the *de novo* standard, was in fact wrong."

*Pinto*, 2011 WL 536443, at *9; *see also Eady v. Am. Cast Iron Pipe Co.*, 203 F. App'x 326, 328 (11th Cir. 2006).

### 2. Administrator Discretion

The parties agree the LTD Plan vests Aetna with discretionary authority to resolve benefit eligibility and to construe the terms of the LTD Plan. Where, as here, Aetna as the Claims Paying Administrator has discretion to review a participant's claim, I must decide whether it had "reasonable grounds" to support its decision. The standard of review is the more deferential arbitrary and capricious standard. *See Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010). Mercado has the burden to show that he was disabled and that Aetna's decision was wrong under the arbitrary and capricious standard. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 2147 (11th Cir. 2008).

### 3. Reasonable Grounds to Support Decision

I find Defendants reasonably concluded that Mercado was no longer entitled to LTD benefits and that their decision was neither arbitrary nor capricious.

Under the arbitrary and capricious standard,[1] review is limited to whether reasonable grounds existed to support Aetna's denial of benefits to Mercado based on the administrative record before it. *See Townsend v. Delta Family-Care Disability and Survivorship Plan*, 295 F. App'x 971, 976 (11th Cir. 2008). This standard does not mean a fiduciary can run roughshod in its investigation of someone's claims. On the contrary, it must exercise its duties "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1132(a)(1), and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *Id.* § 1132(a)(1)(B). But "[a]s long as a reasonable basis appears for [a plan administrator's] decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989).[2]

---

[1] Plaintiff argues less deference is warranted because Aetna failed to follow its internal claim procedures under the LTD Plan. But Aetna's internal guidelines related to the LTD Plan are not part of the record and Magistrate Judge Torres denied Plaintiff's related Motion to Compel (ECF No. 48) as untimely. Even assuming Aetna departed from its policies and less deference was justified, there is substantial evidence on the record to support Aetna's conclusions.

[2] Parties submit the arbitrary and capricious standard warrants a "combination-of-factors method of review" as outlined in *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 118 (2008). Joint

Mercado's strongest criticisms connect to three features of Aetna's investigation: (1) its review of Mercado's SSA disability award, (2) its respect for the VA OPC physician's findings during Mercado's compensation and pension review, and (3) its reliance on peer review reports from two board certified orthopedic surgeons. I examine each in turn.

    a.  *Determination of the Social Security Administration*

Mercado argues Aetna improperly ignored the SSA's findings, which Mercado believes show that he was unable to work twenty-five hours a week, qualifying him for a "Total Disability" under the LTD Plan. Defendants contend they considered the SSA's findings, but interpreted them to mean that Mercado could have worked twenty-five hours a week in sedentary or light physical settings.

Though a plan administrator should consider SSA benefit decisions, "an award of benefits by the [SSA] is not dispositive of the issue before us, particularly given the measure of deference that we afford a plan administrator's decision." *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 (11th Cir. 1997). Further, the LTD Plan's disability definition is more stringent than the one the SSA uses. *See Oliver v. Aetna Life Ins. Co.,* 613 F. App'x 892, 899 (11th Cir. 2015) (comparing the differences between the SSA's five-part benefits test and Aetna's LTD benefits definitions). In particular, the SSA counts as disabled a claimant who cannot perform "substantial gainful activity," while Aetna defines "Total Disability" as "the complete inability . . . to engage in any compensable employment for twenty-five hours per week." *Id*.

Even so, Aetna accepted SSA's findings about Mercado's functional limits. The SSA review remarked Mercado was "able to stand and/or walk 1 hour total in an 8-hour work

---

Pretrial Stip. ¶ 7(c), ECF No. 54. The *Glenn* Court confirmed that this method of review did not "impl[y] a change in the *standard* of review, say, from deferential to *de novo* review." *Id.* at 115 (emphasis in original). But there is a question about the viability of some of *Glenn*'s analysis in a review of an ERISA plan administrator that does not have a conflict of interest (i.e., where the entity that determines eligibility benefits differs from the entity that pays out claims), like in this case. *See, e.g.*, *Fife v. Coop. Ben. Administrators, Inc.*, No. 4:12-CV-3602-VEH, 2014 WL 4470718, at *25 (N.D. Ala. Sept. 10, 2014) (finding the "combination-of-factors" analysis only applied in conflict of interest settings). Though the Eleventh Circuit has not directly assessed how a "combination-of-factors" framework may apply in a non-conflict setting, at least one unpublished panel opinion suggests it would not apply. *See Oates v. Walgreen Co.*, 573 F. App'x 897, 912 (11th Cir. 2014). Even with *Glenn*'s guidance, my conclusion in this case is unchanged. Integral to a *Blankenship* six-part analysis is evaluating the conditions and evidence in a particular case under an arbitrary and capricious standard, just as the *Glenn* Court espoused.

day, [and] sit 4 hours total in an 8-hour work day." Joint Pretrial Stip. ¶ 5(x). Aetna interpreted these numbers to mean Mercado could work at least five hours a day in a combination of sedentary and light physical settings. Mercado disputes this reading, maintaining the SSA's comments presupposed employee break times that would prevent Mercado from working twenty-five hours per week. But Defendants' interpretation is a reasonable one and neither arbitrary nor capricious.

      b. *Compensation and Pension Review*

Mercado also finds Aetna's claim denial inapposite with his compensation and pension review at the VA OPC in November 2013, which found Mercado's degenerative arthritis in his ankles would prevent "physical . . . but not sedentary employment," while his back condition would "prevent all physical and sedentary employment." Joint Pretrial Stip. ¶ 5(z). Aetna retorts that it was not obligated to defer to the review's findings. Instead, Aetna considered the review's findings along with other medical records and peer review reports to make its decision.

While a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003), it "need not accord extra respect to the opinions of a claimant's treating physicians." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1356 (11th Cir. 2011). "[E]ven where [a plaintiff's] own doctors offered different medical opinions than [a plan administrator's] independent doctors, the plan administrator may give different weight to those opinions without acting arbitrarily and capriciously." *Id.*

Here, nothing in the record indicates Aetna acted unreasonably in considering the VA OPC's November 2013 review. First, Dr. Mendelssohn's peer review report explicitly notes it assessed the November 2013 exam as part of its review. *See* ECF No. 27-3 at AR00922. Second, Aetna raises reasonable questions about the medical evidence gathered as part of the November 2013 assessment. *See* Defs.' Reply Supp. Mot. Summ. J. 3 – 5, ECF No. 42. Third, later medical records show improvements in Mercado's condition. *See id.* (citing to later medical records in evidence). These changed circumstances over time reduce the impact of the November 2013 assessment. *Cf. Rassekh Sobh v. Hartford Life and Accident Ins. Co.*, No. 15-15586, 2016 WL 3564380, at *7 (11th Cir. July 1, 2016) (noting the modest

effect an older SSA determination has on a plan administrator's decision, since the SSA could not weigh subsequent, relevant medical events).

        c. *Peer Review Reports*

Mercado further questions Aetna's reliance on its two peer review reports to support its LTD benefits decision. As discussed, it was Aetna's prerogative to consult and appraise the findings of treating and independent physicians alike. It is also not arbitrary or capricious for Aetna to use, like here, "file" reviews by independent doctors as opposed to live examinations. *Blankenship*, 644 F.3d at 1357.

Two separate peer reviews concluded, after reviewing Mercado's relevant medical records, there was not "significant objective clinical documentation" to find that Mercado could not engage in any "compensable employment" for at least twenty-five hours a week. ECF No. 27-3 at AR00916 – 926. Nothing in these reviews suggest the independent physicians, Drs. Rue and Mendelssohn, ignored Mercado's medical records and treating physicians' conclusions. In fact, both reviews acknowledge Mercado's extensive medical history and current conditions. But the LTD plan's stringent "Total Disability" standard, as discussed *supra*, requires more than just a finding of impairments. Both doctors reasoned that, despite his physical difficulties, Mercado could work at least twenty-five hours per week. Aetna's decision to agree with these two reports, while considering Mercado's past SSA and VA OPC findings, was a reasonable one and not arbitrary or capricious.

        4. Conflict of Interest

Having resolved that Defendants' decision rests on reasonable grounds, I now turn to steps four and five of the Eleventh Circuit framework, which requires me to examine whether the Defendants operated under a conflict of interest. A conflict of interest exists where the plan administrator determines eligibility for benefits and also pays claims out of its own assets. *See Capone*, 592 F.3d at 1195; *White v. Coca-Cola Co.*, 542 F.3d 848, 858 (11th Cir. 2008). The LTD Plan is not structured in this manner. Aetna determines eligibility, but FedEx funds the Plan. Thus, no conflict of interest exists.

Because there is no conflict, the fifth step of the Eleventh Circuit analysis requires the court to end the inquiry and affirm the administrator's decision. I affirm Defendants' denial of continued LTD benefits to Mercado.

## IV. CONCLUSION

For the reasons provided, it is **ORDERED and ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 33) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 30) is **GRANTED**. Defendants' denial of continued LTD benefits to Mercado is **AFFIRMED**.

3. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers, at Miami, Florida, this 19th day of July 2016.

*[signature: Marcia G. Cooke]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*